UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
KEISY G.M.,                                                         :
                                                                    :
                                   Petitioner,                      :
                                                                    :               21 Civ. 4440 (JPC)
                    -v-                                             :
                                                                    :               AMENDED[1] OPINION
THOMAS DECKER *et al.*,                                             :               AND ORDER
                                                                    :
                                   Respondents.                     :
                                                                    :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

     Petitioner Keisy G.M.,[2] a native and citizen of the Dominican Republic who is in removal

proceedings, has been detained by U.S. Immigration and Customs Enforcement ("ICE") since

October 5, 2020.  He brings this petition for a writ of habeas corpus against Respondents (the

"Government") challenging his continued detention without a bond hearing and seeking his release

unless the Government affords him a constitutionally adequate bond hearing.[3]

---

[1] The Court filed the original Opinion and Order under seal on November 18, 2021 to
permit the parties to file any proposed redactions.  Dkt. 36.  Petitioner requested redaction of one
sentence of the original Opinion and Order, and the Government took no position on that request.
Dkt. 37 at 1-2.  Upon applying the principles set forth in *Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006), the Court grants Petitioner's request.  This Amended Opinion and
Order reflects that redaction.

[2] Petitioner filed a request that the Court identify Petitioner only by his first name and last
initials in its decision in accordance with the guidance on privacy concerns in immigration cases
by the Committee on Court Administration and Case Management of the Judicial Conference of
the United States.  Dkt. 37 at 2, Exh. B.  The Government also took no position on this request.
*Id.* at 2.  The Court grants Petitioner's request and has amended its original Opinion and Order
accordingly.

[3] Respondent Thomas Decker is the Director of ICE's New York City Field Office.
Respondent Alejandro Mayorkas is the Secretary of Homeland Security.  Respondent Jean King
is the former Acting Director of the Executive Office for Immigration Review ("EOIR").  And
Respondent Merrick Garland is the Attorney General of the United States.   Since the
commencement of this action, David L. Neal replaced King as the Director of EOIR.  Pursuant to

Petitioner's detention is statutorily mandated by 8 U.S.C. § 1226(c) on account of his prior commission of an aggravated felony.  The compulsory detention language of section 1226(c), however, does not end the inquiry as to whether Petitioner should be afforded a bond hearing.  Noncitizens in removal proceedings are entitled to constitutional due process protections.  The question before this Court, thus, is whether Petitioner's detention without a bond hearing has amounted to a due process violation.

Initially, the Court rejects Petitioner's request for a bright line rule requiring a bond hearing after six months of immigration detention, and instead joins many other courts to hold that an individualized inquiry must be conducted into the specific circumstances of the detention.  Without question, Petitioner has been detained without a bond hearing for a lengthy period, and under conditions tantamount to criminal incarceration.  But the fact-specific inquiry that this Court must undertake requires it to look beyond the length and conditions of Petitioner's detention, and ask whether the Government has unreasonably delayed Petitioner's detention such that it no longer serves a valid purpose.  Under the facts presented here, the Government has not.

As discussed more fully below, the first approximately five-and-one-half months of Petitioner's detention occurred during proceedings before the immigration judge ("IJ"), with most of the delay attributable to adjournments sought by Petitioner himself.  At a March 18, 2021 merits hearing on Petitioner's application for relief from removal, the IJ denied that relief and ordered Petitioner removed to the Dominican Republic, a decision that remains the lone adjudication on Petitioner's status.  Four weeks after that adverse decision, Petitioner appealed to the Board of Immigration Appeals ("BIA"), and, after the BIA set a briefing schedule, Petitioner requested and

---

Federal Rule of Civil Procedure 25(d), Neal is automatically substituted for King.  The Clerk of the Court is respectfully directed to update the caption accordingly.

obtained a briefing extension.  That appeal is now fully briefed, pending before the BIA, and, as

of the date of this Opinion and Order, moving at an appropriate pace.  In sum, at all points, ICE or

the immigration court has acted swiftly to move Petitioner's case along, and a decision from the

BIA appears to be forthcoming.

To be sure, there may be circumstances where the continued detention of a noncitizen, even

one previously convicted of an offense requiring detention under section 1226(c), may run afoul

of due process.  This case is not one of them, at least not at this point.  The Petition is therefore

denied.

## I. Background

### A. Factual Background

Petitioner has resided in the United States since his arrival from the Dominican Republic

in 2011 as a lawful permanent resident.  Dkt. 10 ("Petition") ¶ 15.  Several of Petitioner's family

members also live in the United States, including his mother, two sisters, and his three U.S. citizen

children.  *Id.* ¶¶ 16, 18.  According to Petitioner, prior to his arrest by ICE, he worked full-time for

a medical linens company and lived with and cared for his mother, who suffers from "diabetes,

hypertension, and vertigo."  *Id.* ¶¶ 18-19.

On June 6, 2012, Petitioner was arrested in the Bronx for stealing a phone and attacking

someone with a belt.  Dkt. 23 ("Gov't Return"), Exh. 3; Dkt. 15 ("Barrett Declaration")[4] ¶ 5.

Following that arrest, Petitioner and his two co-defendants were charged in a twelve-count

indictment with robbery in the first, second, and third degrees; assault in the second and third

degrees; grand larceny in the fourth degree; menacing in the second degree; criminal possession

---

[4] The Barrett Declaration was submitted by Morganne Barrett, a staff attorney for the New York Immigrant Family Unity Project of The Legal Aid Society who has been lead counsel for Petitioner in his removal proceedings.  Barrett Declaration ¶ 1.

of a weapon in the fourth degree; criminal possession of stolen property in the fifth degree; and petit larceny.  Gov't Return, Exh. 3; Dkt. 24 ("Crow Declaration")[5] ¶ 6.  Petitioner later pleaded guilty on May 6, 2015 in New York Supreme Court, Bronx County, to one count of second degree assault.  Gov't Return, Exh. 4; Crow Declaration ¶ 7.  On February 17, 2016, Petitioner was sentenced to two years of imprisonment, followed by three years of post-release parole supervision.[6]  Gov't Return, Exh. 4.  Petitioner was released five months early due to good behavior after serving one year and seven months in prison.  Gov't Return, Exh. 2 at 7; Barrett Declaration ¶ 7.  He completed his sentence upon his discharge from parole on December 20, 2019.  Gov't Return, Exh. 2 at 7; Barrett Declaration, Exh. E.

In 2014, while on bail following his June 2012 arrest, Petitioner contends that he witnessed his roommate's murder and that the killer then attempted to target Petitioner, his pregnant partner, and his partner's three-year-old son.  Petition ¶ 21; Barrett Declaration ¶ 6.  Petitioner maintains that he cooperated with law enforcement by providing testimony against the culprit.  *Id.*  According to Petitioner, witnessing the murder caused him to suffer from post-traumatic stress disorder, including "intrusive memories and persistent nightmares about his family, including his young children, being killed at their home."  Petition ¶ 20.  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

On October 5, 2020, ICE officers arrested Petitioner.  Petition ¶ 27.  ICE then initiated

---

[5] The Crow Declaration was submitted by Sean P. Crow, a Deportation Officer at ICE who reviewed Petitioner's administrative file and ICE records.  Crow Declaration ¶¶ 1-2.

[6] The Appellate Division, First Department, affirmed Petitioner's conviction on October 24, 2019.  *See People v. Keisy G.M.*, 108 N.Y.S.3d 855 (App. Div. 2019).  On December 24, 2019, the New York Court of Appeals denied leave to appeal.  *See People v. Keisy G.M.*, 34 N.Y.3d 1078 (2019).

removal proceedings, charging Petitioner in a Notice to Appear as removable pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), based on his conviction of an "aggravated felony," *i.e.*, his February 17, 2016 conviction for second degree assault.   Gov't Return, Exh. 6 at 1; Petition ¶ 28; Crow Declaration ¶ 11.   Based on ICE's determination that Petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c), he was detained pending a final administrative determination of his case.   Gov't Return, Exh. 7.[7] Petitioner first appeared in immigration court on October 13, 2020, eight days after his arrest. Crow Declaration ¶ 14.   What followed in immigration court was a series of adjournments, all at the request of Petitioner or his counsel, ultimately culminating in the IJ's denial of relief from removal approximately five months later.

At the first hearing on October 13, 2020, the IJ granted Petitioner's adjournment request to allow him the opportunity to retain counsel and scheduled the next hearing for November 2, 2020. *Id.*  Petitioner appeared for the November 2, 2020 hearing with *pro bono* counsel from The Legal Aid Society, who requested an adjournment to prepare Petitioner's case.   Barrett Declaration ¶ 14; Crow Declaration ¶ 15.   The IJ granted that request and set Petitioner's next hearing for November 24, 2020.   Crow Declaration ¶ 15.   At the November 24, 2020 hearing, Petitioner's counsel requested another adjournment, this time to allow her to file a motion to terminate Petitioner's removal proceedings.   *Id.* ¶ 16.   Petitioner's counsel explained that the anticipated motion would

---

[7] The "Notice of Custody Determination" form advising Petitioner of this detention determination indicates that he refused to sign the form.   Gov't Return, Exh. 7.   Petitioner therefore did not indicate on the form whether he requested a hearing to review ICE's custody determination pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999).   *Id.* at 2.   "At [a *Joseph*] hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [ICE] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention."   *Demore v. Kim*, 538 U.S. 510, 514 n.3 (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); *Matter of Joseph*, 1999 WL 339053).

argue that ICE had not met its burden of establishing, by clear and convincing evidence, that Petitioner was an admitted alien subject to removal.  *Id.*  ICE's counsel argued ICE's opposition to that motion at the November 24, 2020 hearing.  *Id.* ¶ 17.  The IJ directed Petitioner's counsel to file any motion to terminate by November 30, 2020, and scheduled Petitioner's next hearing for December 15, 2020.  *Id.* ¶ 16.

On November 30, 2020, Petitioner's counsel filed that motion to terminate, which the IJ denied in a seven-page written decision ten days later on December 10, 2020.  *Id.* ¶ 17; Gov't Return, Exh. 8.  At the next scheduled hearing on December 15, 2020, the IJ granted Petitioner's request for an adjournment to review the IJ's decision denying termination and scheduled another hearing for a week later.  Barrett Declaration ¶ 14; Crow Declaration ¶ 18.  On December 22, 2020, the IJ sustained the charges in the Notice to Appear and adjourned the case to allow Petitioner's counsel to file an application for deferral of removal under the Convention Against Torture ("CAT").  Barrett Declaration ¶ 14; Crow Declaration ¶ 19.  The IJ scheduled Petitioner's next hearing for January 12, 2021.  Crow Declaration ¶ 19.

On January 11, 2021, Petitioner filed an Application for Asylum and for Withholding of Removal, including protection under CAT.  *Id.* ¶ 20; Petition ¶ 29.  At the January 12, 2021 hearing, Petitioner's counsel asked for a four-to-five-week adjournment to prepare the case, which ICE opposed.  Crow Declaration ¶ 20.  Instead of granting the full adjournment sought by Petitioner's counsel, the IJ adjourned the hearing for three weeks and set the next hearing for February 4, 2021.  *Id.*  On February 4, 2021, the IJ designated the Dominican Republic as Petitioner's country of removal, in the event removal was ordered, and scheduled a merits hearing on Petitioner's application for relief from removal for March 5, 2021.  *Id.* ¶ 21.

On February 25, 2021, however, Petitioner's counsel requested an adjournment of the

6

March 5, 2021 merits hearing, citing COVID-related restrictions at the Hudson County Correctional Facility that complicated her ability to finalize Petitioner's submissions and adequately prepare Petitioner for his testimony. *Id.* ¶ 23; Petition ¶¶ 30-31. The IJ granted Petitioner's request for a continuance and rescheduled the merits hearing for March 18, 2021. Crow Declaration ¶ 23. At the March 18, 2021 hearing, the IJ considered the evidence submitted by Petitioner, including testimony from his mother and two experts, and issued an oral decision denying Petitioner relief and ordering his removal to the Dominican Republic. *Id.* ¶ 24.[8]

Petitioner appealed the IJ's decision to the BIA on April 15, 2021 and opening briefs were due on June 11, 2021. *Id.* Petitioner's counsel, however, requested an adjournment of that deadline, which the BIA granted and set a new briefing deadline of July 2, 2021. *Id.* At oral argument in this case on November 2, 2021, the Government reported that Petitioner's BIA appeal is now fully briefed and that the Government expects a decision shortly. Nov. 2, 2021 Tr. at 19. In addition, Petitioner's counsel advised that, on August 27, 2021, Petitioner filed a motion to remand before the BIA, which the Government opposed on September 2, 2021. *Id.* at 4. That

---

[8] In addition, at various points, ICE has conducted custody determination reviews for Petitioner that examined COVID-19 risk factors. On February 19, 2021, Petitioner requested such a review, which ICE conducted the same day and determined that he would remain in ICE custody. Crow Declaration ¶ 22; Barrett Declaration ¶ 21. Petitioner again requested that ICE review his custody in light of COVID-19 on or about March 31, 2021, which ICE once again did on the same day and determined that Petitioner would remain in ICE custody. Crow Declaration ¶ 25. And then, on April 26, 2021, Petitioner asked for ICE to again review his custody in light of COVID-19, and yet again ICE conducted that review on the same day and determined that he would remain in ICE custody. *Id.* ¶ 27. Furthermore, on or about March 30, 2021, Petitioner's counsel requested that ICE review Petitioner's custody under ICE's interim guidance regarding civil immigration and removal enforcement. *Id.* ¶ 26. Petitioner's counsel received notice from ICE on April 2, 2021 that ICE had reviewed Petitioner's custody under that interim guidance and determined that he would remain in ICE custody. Barrett Declaration ¶ 25. On April 8, 2021, Petitioner's counsel submitted another request to ICE for Petitioner's release under that interim guidance. *Id.* ¶ 26. In a letter sent via email on or about April 12, 2021, ICE informed Petitioner's counsel that ICE had reviewed Petitioner's custody under the interim guidance and determined that he would remain in ICE custody. *Id*; Crow Declaration ¶ 26.

motion to remand also is pending before the BIA.  *Id.*

On April 8, 2021, one week before filing his appeal to the BIA, Petitioner filed a petition for U nonimmigrant status ("U Visa") based on being a victim of attempted murder and his subsequent cooperation with law enforcement.  Petition ¶ 35; Barrett Decl. ¶ 15.  A noncitizen is eligible for a U Visa if he or she (1) "has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity," (2) "possesses credible and reliable information" regarding the criminal activity upon which the petition is based, and (3) "has been helpful, is being helpful, or is likely to be helpful" to law enforcement in investigating or prosecuting the criminal activity.  8 C.F.R. § 214.14(b).  The United States Citizenship and Immigration Services ("USCIS") has exclusive jurisdiction over all petitions for U Visas, *id.* § 214.14(c), and the U Visa program has a statutory cap of 10,000 principal visas, known as "U-1 Visas," per year, *id.* § 214.14(d).

In 2020, the median processing time for a U Visa application was 54.3 months—roughly 4.5 years.  *Historical National Median Processing Time (in Months) for all USCIS Offices for Select Forms by Fiscal Year*, egov.uscis.gov/processing-times/historic-pt (last visited Nov. 29, 2021).  If the cap is reached before USCIS has adjudicated all of the U Visa petitions for a given year, USCIS creates a waiting list for eligible petitioners.  8 C.F.R. § 214.14(d)(2).  In the following year, USCIS will issue a number of visas to eligible petitioners on the waiting list, giving priority to the oldest petitions.  *Id.*  Although ICE may, in its discretion, move to terminate or stay removal proceedings with an immigration judge or the BIA while USCIS adjudicates an individual's U Visa, *see id.* § 214.14(c)(1)(i), a pending U Visa petition does not constitute a defense to removal, *see Revision of Stay of Removal Request Reviews for U Visa Petitioners*, ice.gov/factsheets/revision-stay-removal-request-reviews-u-visa-petitioners (last visited Nov. 29,

2021) ("The U visa regulations do not prevent pending U visa petitioners from being removed."). However, "[i]f removed, USCIS will continue to adjudicate the U visa petition." *Id.*; *see* Nov. 2, 2021 Tr. at 23 (Government confirming that USCIS would continue to review Petitioner's U Visa application if he were removed).

## B.  Procedural History

On May 18, 2021, Petitioner petitioned for a writ of habeas corpus challenging his ongoing detention without a bond hearing under section 1226(c). *See* Dkt. 1.[9]  On June 3, 2021, Petitioner filed an amended petition, *i.e.*, the Petition.  Petitioner seeks a writ ordering his release unless the Government provides him with a constitutionally sufficient bond hearing at which the Government must justify his continued detention by clear and convincing evidence and at which the immigration judge considers alternatives to detention.  On June 22, 2021, the Government opposed the Petition on the grounds that Petitioner's detention during his ongoing removal proceedings does not violate his due process rights and that, in the event Petitioner is granted a bond hearing, Petitioner is not entitled to additional procedural safeguards.  *See* Dkt. 25.

## II. Discussion

## A.  Jurisdiction over Habeas Petitions

Federal district courts may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*,

---

[9] On May 18, 2020, ICE transported Petitioner from the Hudson County Correctional Facility in Kearny, New Jersey to ICE's New York Field Office at 26 Federal Plaza in Manhattan, where he was detained for approximately six hours before being transported to the Lasalle ICE Processing Center in Jean, Louisiana.  Barrett Declaration ¶¶ 40-42; Crow Declaration ¶ 28. Petitioner initiated this habeas proceeding while he was physically detained at ICE's New York Field Office and therefore while he was in this District.  Petition ¶ 13; Barrett Declaration ¶¶ 36, 41.  Venue is thus proper.  *See Singh v. Decker*, No. 20 Civ. 9089 (JPC), 2021 WL 23328, at *3 (S.D.N.Y. Jan. 4, 2021).

320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (holding that section 2241 grants federal courts the authority to answer "whether the detention in question exceeds a period reasonably necessary to secure removal"). "[T]he Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Zadvydas*, 533 U.S. at 693). Habeas review thus extends to "claims by non-citizens challenging the constitutionality of their detention." *Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *3 (S.D.N.Y. July 25, 2018) (citing *Demore*, 538 U.S. at 516-17); *see Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review.").

### B.  Mandatory Detention Pursuant to Section 1226(c)

The Immigration and Nationality Act provides for the apprehension and detention of noncitizens pending removal proceedings. Section 1226(a) affords the Attorney General discretion to detain noncitizens or release them with conditions pending a removal decision, "[e]xcept as provided in subsection (c)." 8 U.S.C. § 1226(a). Section 1226(c), in turn, "carves out a statutory category of aliens who may *not* be released under § 1226(a)," including those deportable for having committed an aggravated felony. *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018); *see* 8 U.S.C. § 1226(c)(1)(B). The parties do not dispute that Petitioner's February 17, 2016 conviction for second degree assault is an "aggravated felony" for purposes of the INA. *See* Nov. 2, 2021 Tr. at 6.[10]

In its 2003 decision in *Demore*, the Supreme Court upheld the facial constitutionality of

---

[10] Section 1226(c)(2) provides for a narrow exception to mandatory detention for witness protection purposes and if "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

mandatory detention under section 1226(c), holding that the Government may detain a noncitizen for the brief period necessary for removal proceedings.  538 U.S. at 513 ("Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings.").  Justice Kennedy, concurring, agreed that a bond hearing was not required under the circumstances presented in *Demore*, but wrote that a lawful permanent resident in removal proceedings "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  *Id.* at 532-33 (Kennedy, J., concurring); *see Zadvydas*, 533 U.S. at 690 (observing that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause).

Until a few years ago, the law in this Circuit was that "an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention" to avoid constitutional concerns raised by indefinite detention.  *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015).  The Second Circuit in *Lora* followed the Supreme Court's decisions in *Demore* and *Zadvydas* to hold that "in order to avoid significant constitutional concerns surrounding the application of section 1226(c), it must be read to contain an implicit temporal limitation."  *Id.* at 606.

In 2018, the Supreme Court in *Jennings* rejected this statutory construction, holding that section 1226(c) "does not on its face limit the length of the detention it authorizes" and, to the contrary, "the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions."  138 S. Ct. at 846-47.  The majority's opinion in

*Jennings* addressed the limitations of detention as a statutory matter but declined to reach the constitutional issues.  *See id.* at 851 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. . . .  Instead, we remand the case to the Court of Appeals to consider them in the first instance."); *see also Cabral v. Decker*, 331 F. Supp. 3d 255, 260 (S.D.N.Y. 2018) ("The *Jennings* decision left open the possibility that individual detentions without bond hearings might be so lengthy as to violate due process.").  The Supreme Court vacated and remanded *Lora* in light of its decision in *Jennings*.[11]  *See Shanahan v. Lora*, 138 S. Ct. 1260 (2018).  Accordingly, the six-month bright line established in *Lora* no longer controls.

Since *Jennings*, neither the Supreme Court nor the Second Circuit has resolved whether a noncitizen detained pursuant to section 1226(c) may be entitled to a bond hearing under the Constitution.  But several lower court decisions in this District post-*Jennings* have addressed this issue and concluded that noncitizens subject to mandatory detention under section 1226(c) are entitled to an individualized determination as to their risk of flight and dangerousness when their continued detention becomes unreasonable and unjustified such that it violates due process.  *See, e.g.*, *Sajous v. Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266, at *8-11 (S.D.N.Y. May 23, 2018); *id.* at *10 ("[W]hether mandatory detention under § 1226(c) has become unreasonable, and thus a due process violation, must be decided using an as-applied, fact-based analysis." (internal quotation marks and citations omitted)).

---

[11] The Second Circuit did not have an opportunity to consider the issues raised by the Supreme Court on the *Lora* remand because, during the pendency of the appeal, the petitioner received cancellation of removal, rendering the case moot.  *Lora v. Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018).

## C.  The Court Declines to Impose a Bright Line Six-Month Rule

The Court begins with, and rejects, Petitioner's urging that the Court adopt a "bright line rule," whereby a due process violation automatically occurs if a noncitizen is detained in ICE custody for six months without a bond hearing.  Petition ¶¶ 82-83.  In *Demore*, the Supreme Court recognized that due process does not require a bond hearing solely because detention under section 1226(c) lasts beyond six months.  There, the Court upheld the constitutionality of the noncitizen's mandatory detention even though the noncitizen already had spent six months in immigration custody, holding that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  538 U.S. at 531.  And while not reaching the constitutional issue, the *Jennings* Court explained that "due process is flexible" and "calls for such procedural protections as the particular situation demands."  138 S. Ct. at 852.

Several circuit and district courts have similarly concluded that the determination of whether detention pursuant to section 1226(c) violates due process is not amenable to a bright line rule.  *See, e.g.*, *Reid v. Donelan*, Nos. 19-1787, 19-1900, 2021 WL 4958251, at *5 (1st Cir. Oct. 6, 2021) (affirming the district court's decision that "six months of detention did not on its own necessarily trigger a constitutional right to a reasonableness hearing or bond hearing for a person already convicted of a crime that triggers detention under section 1226(c), and that any such relief must be adjudicated on an individual basis"); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020) (declining "to adopt a presumption of reasonableness or unreasonableness of any duration" because "[r]easonableness is a 'highly fact-specific' inquiry"); *Vazquez Perez v. Decker*, No. 18 Civ. 10683 (AJN), 2020 WL 7028637, at *16 (S.D.N.Y. Nov. 30, 2020) ("There is no bright-line rule to determine at what point detention has become sufficiently prolonged as to violate substantive due process principles" because "[r]easonableness,

by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case."); *Cabral*, 331 F. Supp. 3d at 260 (refusing to adopt a six-month rule, explaining that "it would be inconsistent with the discussion of due process in *Jennings* to find a due process requirement of an automatic bond hearing after a detention of six months"); *Sajous*, 2018 WL 2357266, at *9 ("[T]he Court cannot conclude . . . that the Constitution would deem any detention beyond six months per se unconstitutional.").

### D. The Circumstances of Petitioner's Detention Have Not Violated Due Process

Having rejected a bright line rule, the Court turns to an individualized assessment of whether Petitioner's immigration detention has violated due process.  In conducting such fact-based analyses, courts have considered factors to include: (1) the length of detention; (2) the party responsible for the delay; (3) whether the noncitizen has asserted defenses to removal; (4) the nature of the noncitizen's crimes; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; and (6) whether the noncitizen's detention is near conclusion. *See, e.g.*, *Gabrae Hylton v. Decker*, 502 F. Supp. 3d 848, 854 (S.D.N.Y. 2020); *Nikolic v. Decker*, No. 19 Civ. 6047 (LTS), 2019 WL 5887500, at *4-5 (S.D.N.Y. Nov. 12, 2019); *Sajous*, 2018 WL 2357266, at *10-11; *Cabral*, 331 F. Supp. 3d at 261; *Vallejo v. Decker*, No. 18 Civ. 5649 (JMF), 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018).  As in any fact-based analysis, different factors take on different weight depending on the circumstances of the case.  The questions of whether the Government has engaged in unreasonable delay and whether Petitioner's detention is serving a valid purpose are particularly significant here, and demonstrate that his ongoing detention has not run afoul of due process.

But certain factors weigh in Petitioner's favor.  The entirety of Petitioner's immigration detention—first at the Hudson County Correctional Facility and now at the Etowah County

14

Detention Center in Gadsden, Alabama—has occurred under conditions that are not meaningfully different from penal incarceration.  *See* Barrett Declaration ¶¶ 27, 49-51; Nov. 2, 2021 Tr. at 20 (the Government acknowledging that the conditions at Etowah "sound as if they're similar to criminal detention").  Petitioner also has been detained for nearly fourteen months, which exceeds the "brief period" that the Supreme Court deemed reasonable in *Demore*, 538 U.S. at 530.  The analysis, however, does not end there.  "[T]he sheer length of the proceedings is not alone determinative of reasonableness.  Rather, the principal factor considered in constitutional review of detention pending removal proceedings is the degree to which the proceedings have been prolonged by unreasonable government action."  *Debel v. Dubois*, No. 13 Civ. 6028 (LTS) (JLC), 2014 WL 1689042, at *5 (S.D.N.Y. Apr. 24, 2014).

It is therefore necessary to examine the circumstances that resulted in Petitioner's past nearly fourteen months of detention.  The first part of this period occurred during immigration court proceedings before the IJ.  Petitioner was arrested on October 5, 2020, and the IJ denied his request for relief from removal pursuant to CAT and ordered his removal to the Dominican Republic on March 18, 2021.  Throughout this five-and-one-half-month period, ICE and the IJ expeditiously progressed Petitioner's case, ensuring a determination on his removal without unreasonable delay.  Petitioner's first hearing took place on October 13, 2020, only eight days after his arrest.  When Petitioner moved to terminate his removal proceedings on November 30, 2020, the IJ resolved that motion in a seven-page written decision issued ten days later on December 10, 2020.  The IJ conducted a merits hearing on Petitioner's request for relief from removal on March 18, 2021, and resolved that application at the hearing, finding that Petitioner had not met his burden of showing that he warranted protection under CAT.

Meanwhile, it is evident that Petitioner's immigration court proceedings spanned over five

months largely on account of adjournments requested by Petitioner himself.  *See Demore*, 538 U.S. at 530-31 (observing that although the noncitizen who had spent six months in immigration custody under section 1226(c) "was detained for somewhat longer than the average," he was responsible for the delay by "request[ing] a continuance of his removal hearing"); *Nikolic*, 2019 WL 5887500, at *5 (concluding that the petitioner was "primarily responsible for the delay in his proceedings" because he adjourned the immigration court hearing to retain counsel and the petitioner's competency hearing was adjourned twice at the petitioner's request); *cf. Sajous*, 2018 WL 2357266, at *10 ("If the alien has requested several continuances or otherwise delayed immigration proceedings, it is less likely that the length of his detention could be deemed unreasonable because 'aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute.'" (quoting *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015)).  The IJ granted adjournments sought by Petitioner on October 13, 2020, November 2, 2020, November 24, 2020, December 15, 2020, January 12, 2021, and February 25, 2021.  Barrett Declaration ¶¶ 14, 19; Crow Declaration ¶¶ 14-16, 18, 20.  And for one of these adjournment requests—his January 12, 2021 request for a four-to-five-week continuance—the IJ did not even grant the full adjournment sought by Petitioner.  Crow Declaration ¶ 20.

Nor has there been any unreasonable delay in Petitioner's pending appeal before the BIA, at least thus far.  And here too, the length of the BIA process has been extended, at least in part, by Petitioner's own conduct.  After the IJ denied Petitioner relief from removal on March 18, 2021, Petitioner did not appeal to the BIA until four weeks later on April 15, 2021.  The BIA issued a briefing schedule, pursuant to which Petitioner's opening brief was due June 11, 2021.  Yet Petitioner sought an adjournment of that deadline, which the BIA granted until July 2, 2021.

ICE also expeditiously addressed Petitioner's multiple requests that the agency revisit its determination that he should remain in custody. Petitioner requested that ICE review its custody determination by examining COVID-19 risk factors on February 19, 2021, March 31, 2021, and April 26, 2021, and on each occasion, ICE conducted the review and affirmed its custody determination on the very same day. Crow Declaration ¶¶ 22, 25, 27. Similarly, when Petitioner requested reviews of his custody in light of ICE's interim guidance regarding civil immigration and removal enforcement[12] on or about March 30, 2021 and April 8, 2021, ICE informed Petitioner of the results of those reviews mere days later on April 2, 2021 and April 12, 2021, respectively. *Id.* ¶ 26; Barrett Declaration ¶¶ 25-26.

The circumstances here—with the IJ and ICE moving swiftly as Petitioner sought adjournments and appealed—are markedly different from those in many of the cases cited by Petitioner where judges in this District have found unreasonable delay on the part of the Government. Take *Cabral*, for example. *See* Petition ¶¶ 64, 69 (citing *Cabral*). There, the immigration judge adjourned the noncitizen's case several times because of ICE's filing of an amended notice to appear and in order to rule on the petitioner's motion to terminate, in the process continuing the merits hearing three months out without a decision on the petitioner's request for relief. *Cabral*, 331 F. Supp. 3d at 257-58; *see id.* at 261 ("The most recent adjournment of the hearing from August 7, 2018, to November 14, 2018—over three months—was occasioned because the IJ did not have sufficient time to hear all of the evidence on August 7."). Thus, unlike

---

[12] Ms. Barrett explains that Petitioner sought a custody review on the ground that he was not an enforcement priority under (1) the January 20, 2021 Department of Homeland Security ("DHS") memorandum entitled "Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities," issued by then-Acting DHS Secretary David Pekoske, and (2) the February 18, 2021 "Interim Guidance for Civil Immigration Enforcement and Removal Priorities," issued by Acting ICE Director Tae D. Johnson. Barrett Declaration ¶ 22.

the situation here, where the IJ promptly moved Petitioner's case forward with any delay resulting from Petitioner's multiple adjournment requests, the lengthy adjournments in *Cabral* were caused by the immigration judge or ICE. Indeed, in finding that the petitioner in *Cabral* did not unreasonably delay the proceedings, the district court observed that "it does not appear that [the petitioner] ever requested a continuance or an adjournment." *Id.* at 261.

*Hernandez* also is distinguishable. *See* Petition ¶ 64 (citing *Hernandez*). In that case, the petitioner's first immigration court hearing occurred over one month after his arrest, and the immigration judge adjourned the merits hearing for approximately one-and-one-half months without issuing a decision because the immigration judge "did not have sufficient time to complete the case." 2018 WL 3579108, at *2-3. The district court there observed that the petitioner's proceedings "have just begun" and his detention "could continue for a significant additional period of time." *Id.* at *8. The court further noted that the petitioner's "next hearing quite possibly won't be the last one before the IJ . . . due to backlogs and the new videoconferencing procedures at the [immigration] court" as well as "the extensive evidence and argument that [the petitioner] has every right to present." *Id.* The court also expressed concern that "the IJ's first adjournment for a lack of readiness indicates future adjournments may be forthcoming." *Id.*

Similarly, in *Vallejo*, the petitioner had his first appearance before the immigration judge nearly two months after he was transferred into ICE custody. 2018 WL 3738947, at *1-2; *see* Petition ¶ 66 (citing *Vallejo*). Following his initial bond hearing, at which the immigration judge found that the petitioner was a flight risk, the immigration judge adjourned the petitioner's case eight times. *Vallejo*, 2018 WL 3738947, at *2. Although the petitioner was responsible for some of the adjournments, including due to an unavailable witness and a scheduling conflict on the part of the petitioner's counsel, the majority of the adjournments were attributable to the immigration

judge.  *Id.* at *4 ("In the Court's view, at least five of the eight delays in [the petitioner]'s proceedings—namely, the first, fourth, fifth, seventh, and eighth adjournments or continuances— are attributable to the Government.").   The district court also expected that the petitioner's proceedings in immigration court, and therefore his detention, were likely to continue for "several more months, if not more."  *Id.* *5 (internal quotation marks omitted).  The court additionally found the petitioner's application for withholding of removal to be "plainly colorable . . . as a DHS asylum officer already concluded that [the petitioner] has a 'reasonable fear of persecution or torture' if he is removed to Honduras."  *Id.* at *4.  In contrast, here, the IJ has found that Petitioner failed to meet his burden to warrant protection under CAT and ordered him removed.

This case also is distinguishable from *Sajous*, where the petitioner appeared for his first hearing before an immigration judge approximately two months after he was taken into ICE custody.  2018 WL 2357266, at *3; *see* Petition ¶¶ 64-66, 69 (citing *Sajous*).  While the petitioner in *Sajous* did request adjournments prior to seeking relief from removal, those continuances were "*because* of a prolonged, uncorrected failure by the relevant immigration agencies" to process and send the petitioner's A-file to his counsel.  *Sajous*, 2018 WL 2357266, at *11.  While Petitioner here generally contends that COVID-related restrictions at the Hudson County Correctional Facility contributed to Petitioner's delay, any such COVID-related delay appears to have been the basis for only one of the six adjournments that Petitioner sought from the IJ and Petitioner has not pointed to any other evidence that the IJ or ICE unreasonably prolonged the proceedings, despite the challenges posed by the pandemic.

The contrast between these cases and the instant case is stark.  Petitioner's first appearance before the IJ occurred merely eight days after his arrest by ICE officers, significantly faster than the approximately two-month delay between the petitioner's arrest and his first hearing in *Sajous*,

2018 WL 2357266, at *3, the nearly two-month delay in *Vallejo*, 2018 WL 3738947, at *1-2, and the over one-month delay in *Hernandez*, 2018 WL 3579108, at *2. And all adjournments of Petitioner's hearings in immigration court were at Petitioner's request, with none requested by ICE or *sua sponte* ordered by the IJ, which is quite different from the immigration judge in *Cabral* who ordered months of adjournments, apparently none at the petitioner's request, because she did not have enough time to consider the evidence, *Cabral*, 331 F. Supp. 3d at 257-58, 261, or the at least five adjournments in *Vallejo* that were "clearly attributable to the Government," resulting in "more than eleven months[] of detention," 2018 WL 3738947, at *4. *See also Lett v. Decker*, 346 F. Supp. 3d 379, 388 (S.D.N.Y. 2018) (finding that a three-month delay was attributable to the immigration court which had adjourned the petitioner's case on several occasions, including because "the decision was not yet ready" and because "the case was inadvertently not assigned to a clerk"); *Dukuray v. Decker*, No. 18 Civ. 2898 (VB), 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (finding that a three-month delay caused by the immigration judge rescheduling the petitioner's merits hearing "for administrative reasons" constituted the majority of the delay in the case).

The reasonings of judges in this District who have found no due process violation, despite lengthy immigration detention without a bond hearing, also are instructive when viewed in the context of circumstances presented here. In *Nikolic*, for instance, the petitioner appeared for his first hearing in immigration court approximately one month after he was taken into ICE custody. 2019 WL 5887500, at *1-2. The petitioner sought four adjournments, including to obtain counsel, to request a competency hearing, and to undergo psychological testing in advance of the competency hearing. *Id.* at *2. Thereafter, the petitioner's counsel filed two applications for relief from removal; the immigration judge denied those applications and ordered him removed to

Serbia.  *Id.*  The petitioner then appealed the immigration judge's decision to the BIA.  *Id.*  At the time of the district court's decision, the petitioner had been detained for over eleven months.  *Id.* at *5.  The district court concluded that the petitioner "failed to carry his burden of demonstrating that his continued detention has become 'unreasonable and unjustified,' such that it violates due process," explaining, *inter alia*, that the petitioner "is primarily responsible for the delay in his proceedings" and he failed to identify "any delay caused by Respondents."  *Id.* at *4-5; *see also Antoine Hylton v. Shanahan*, No. 15 Civ. 1243 (LTS), 2015 WL 3604328, at *5 (S.D.N.Y. June 9, 2015) (declining to find the petitioner's nearly two-year detention without a bond hearing unreasonable because the petitioner's "detention has been prolonged in large part due to the granting of [the petitioner]'s requests for time to seek representation, to prepare adequately for each conference before the immigration judge, to prepare his case in opposition to removal, and to seek relief from the removal order, and by his appeal of the order of removal against him").

Likewise, in *Debel*, the hearing on the petitioner's removability did not occur until approximately six months after his first appearance in immigration court "[d]ue to three requests for continuances made by [the petitioner] and one Government error, which led to a continuance." 2014 WL 1689042, at *2.  At that hearing, the immigration judge found the petitioner removable as charged in the notice to appear.  *Id.*  The hearing was then "continued three more times"—for a total of seven continuances—"in order to accommodate [the petitioner]'s preparation of an application for relief from removal."  *Id.*  Over eight months later (*i.e.*, over fourteen months after the petitioner's first appearance in immigration court), the immigration judge denied the petitioner's application for relief from removal and entered an order of removal.  *Id.*  The district court found that the petitioner's ongoing detention was not unreasonable.  Although the petitioner was likely to be detained over two years without a bond hearing, the court explained that "the

length of [the petitioner]'s detention has been augmented in large part due to the granting of his requests for numerous continuances to allow him time to seek representation, to prepare his case in opposition to removal, to seek relief from the removal order, and by his appeal of the order of removal against him." *Id.* at *6.  Such continuances and the appeals process, the court noted, "have thus far extended the proceedings by approximately one year." *Id.*  In contrast, the court found "no evidence that the immigration authorities have unreasonably prolonged [the petitioner]'s removal proceedings and consequent detention." *Id.*

Here, Petitioner requested six adjournments during his immigration court proceedings. Like in *Nikolic*, *Antoine Hylton*, and *Debel*, these adjournments were sought to allow Petitioner time to seek representation, to prepare adequately for each conference before the IJ, to prepare his case in opposition to removal, and to seek relief from the removal order.  Petitioner has further prolonged his detention by appealing the IJ's order of removal, which has resulted in expected delay to allow for the adjudication of his appeal. *See Debel*, 2014 WL 1689042, at *6.  While the Court does not find Petitioner's requests for adjournments or his appeal to the BIA to be frivolous, Petitioner's ongoing detention at this point is the result of his decision to appeal the IJ's decision, and further delays caused by that choice "does not make continued detention unreasonable or unjustified." *Baker v. Johnson*, 109 F. Supp. 3d 571, 586 (S.D.N.Y. 2015) (internal quotation marks omitted); *see id.* ("To the extent the proceedings are extended by appeals or by motion practice initiated by Petitioner, 'the Court properly takes into account the fact that [Petitioner's] continued detention' may be at least in part 'a result of [his] choice to appeal' and otherwise prolong the proceedings with motion practice." (quoting *Johnson v. Orsino*, 942 F. Supp. 2d 396, 410 (S.D.N.Y. 2013)) (alterations in original)).  Petitioner of course had every right to appeal to the BIA, but his pursuit of that appeal after an adverse decision should not permit him to secure

release from custody when Congress otherwise mandated it, absent a delay in the BIA process that runs afoul of the due process clause. *Id.* ("Although [Petitioner] indisputably 'has every right to seek relief from deportation for which he may be eligible, delay caused by his actions does not make continued detention unreasonable or unjustified.'" (quoting *Johnson*, 942 F. Supp. 2d at 409)); *Debel*, 2014 WL 1689042, at *6 ("Delays attributable to normal considerations of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country."); *Antoine Hylton*, 2015 WL 3604328, at *6 (same).   This is especially true given the IJ's denial of relief and removal order, which strongly suggest that his detention is serving a valid purpose. *See Nikolic*, 2019 WL 5887500, at *5 (explaining that, where the immigration judge had rejected the petitioner's defenses to removal, the petitioner's "detention at least marginally serves the ultimate purpose behind the detention" (internal quotation marks and alterations omitted)); *see also Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring) (explaining that the relevant question is "whether the detention is not to facilitate deportation . . . but to incarcerate for other reasons").

In assessing the length of detention, courts also "consider 'the likely duration of continued detention,' [and] not just the duration of past detention." *Nikolic*, 2019 WL 5887500, at *5.   In *Cabral*, for instance, the court found it significant that, by the time of his next hearing, the petitioner would have been detained for over nine months without any decision from the immigration judge as to his request for relief from removal and "without any assurance that [his detention] will end at that time." *Cabral*, 331 F. Supp. 3d at 261.   In this respect as well, Petitioner's case stands in stark contrast.   Unlike a situation where a decision from the immigration judge did not appear to be forthcoming, *see id.*, or where the proceedings "have just begun," *Hernandez*, 2018 WL 3579108, at *8, Petitioner's removal proceedings before the IJ have

concluded: the IJ denied Petitioner's motion to terminate those proceedings, has denied Petitioner's request for relief under CAT, and has ordered Petitioner removed to the Dominican Republic.  Petitioner's appeal to the BIA is fully briefed, and a decision is expected in the near future.  Therefore, unless Petitioner loses before the BIA and he opts to petition for review before the Second Circuit, his detention is unlikely to continue much longer.

And as suggested above, there has been no unreasonable delay in the BIA appellate process, at least thus far.  The appeal has been fully briefed for approximately five months.  While the Government understandably is unable to provide a specific timeline for a BIA decision, the Government stated at oral argument that it expects a decision soon, which would be consistent with the applicable federal regulations.  *See* 8 C.F.R. § 1003.1(e)(8)(i) ("Except in exigent circumstances as determined by the Chairman, subject to concurrence by the Director, or as provided in paragraph (d)(6) of this section or as provided in §§ 1003.6(c) and 1003.19(i), the Board shall dispose of all cases assigned to a single Board member within 90 days of completion of the record, or within 180 days of completion of the record for all cases assigned to a three-member panel (including any additional opinion by a member of the panel).").

And for many of the same reasons discussed above, the question of Petitioner's eligibility for any relief from removal weighs against finding unreasonable delay.  In ruling against Petitioner on his claim for relief under CAT, the IJ found that Petitioner failed to demonstrate that he suffered torture in the past and that "it is not more likely than not that [Petitioner] would be tortured" if removed to the Dominican Republic.  Gov't Return, Exh. 10 at 6-8.  Thus, Petitioner's case is different from those in which no ruling on removability had been issued, *see, e.g.*, *Cabral*, 331 F. Supp. 3d at 261-62; *Hernandez*, 2018 WL 3579108, at *8, or where a DHS asylum officer already had found a reasonable fear of persecution or torture, *see Vallejo*, 2018 WL 3738974, at *4.

Indeed, the IJ's decision finding him not entitled to CAT relief and ordering him removed remains the only adjudication as to Petitioner's request for relief from removal.  *See Nikolic*, 2019 WL 5887500, at *5 (finding that the petitioner's detention had not been unreasonably delayed because, *inter alia*, "while [the petitioner] has asserted defenses to removal, they were all rejected by the immigration judge").  Petitioner's continued detention, in light of that adverse ruling, is "more reasonable" than a noncitizen who has not yet received an adverse decision by an immigration judge ordering removal.  *Id.* (internal quotation marks and alterations omitted).  Nor does Petitioner's pending U Visa petition weigh in his favor.  USCIS—and not ICE—adjudicates U Visa petitions.  Although a favorable determination by USCIS on Petitioner's eligibility for a U Visa would provide an independent basis for Petitioner to remain in the United States, his pending U Visa petition does not constitute a defense to removal.

Finally, the seriousness of Petitioner's crime also cuts against Petitioner.  Petitioner was arrested for stealing a phone and attacking a person with a belt.  In connection with his arrest, Petitioner pled guilty to one count of second degree assault.  The seriousness of this offense is reflected not only by the resulting penal sentence, but also by Congress's decision to put this offense among the special category of crimes that requires mandatory detention under section 1226(c).[13]

---

[13] Other courts in this District also have considered a petitioner's prior criminal sentence length in comparison to the length of civil detention.  *See, e.g.*, *Sajous*, 2018 WL 2357266, at *11; *Cabral*, 331 F. Supp. 3d at 262.  The Court finds this factor to be less persuasive for purposes of the due process analysis here, since Petitioner's prior criminal incarceration and his current immigration detention serve different purposes.  It also is a less compelling consideration where, as here, the immigration detention is delayed due to the noncitizen seeking adjournments and then appealing an adverse decision.  In any event, this factor would cut slightly against Petitioner because he was sentenced to two years of imprisonment for his criminal conviction and served one year and seven months, which exceeds the nearly fourteen months that he has been in immigration custody.

In sum, as Justice Kennedy observed in his concurrence in *Demore*, "[w]ere there to be an unreasonable delay by the [Government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." 538 U.S. at 532-33.  At this point, there has been no unreasonable delay by the Government in completing Petitioner's deportation proceeding, nor any reason to think that his continued detention is for any purpose other than to facilitate his deportation.  Rather, the Government has at all turns moved at an appropriate pace during Petitioner's removal proceedings, with the overwhelming majority of the delay resulting from adjournments sought by Petitioner and his decision to appeal a ruling denying him relief from removal.

### III. Conclusion

For the reasons stated, the Petition is denied in its entirety.[14]  The Clerk of Court is respectfully directed to amend the caption to substitute David L. Neil for Jean King as a Defendant, enter judgment in the Government's favor, and close this case.

SO ORDERED.

Dated: November 29, 2021
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[14] Having determined that Petitioner's ongoing detention does not violate his due process rights at this time, the Court does not reach Petitioner's argument regarding the appropriate procedures at any bond hearing.